**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **STEVEN DAVIS,** | |
| Plaintiff, | |
| v. | |
| **RONALD A. PAVLIK, JR., in his official capacity as Chief of the Metro Transit Police Department**, <br> 600 5th Street NW <br> Washington, DC 20001 | **Case No. 8:20-cv-00547-GJH** |
| and | |
| **FIGARO ESTIME,** <br> Serve: <br> Metro Transit Police Department <br> 600 5th Street NW <br> Washington, DC 20001 | |
| Defendants. | |

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Steven Davis, by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), sues Defendants Ronald A. Pavlik, Jr., in his official capacity as Chief of the Metro Transit Police Department, and Figaro Estime, and complains[1] as follows:

### PARTIES

1.      Plaintiff Steven Davis is an adult citizen of Maryland. He is the Plaintiff in this action.

2.      Defendant Ronald A. Pavlik, Jr. ("Chief Pavlik") is the Chief of the Metro Transit Police Department (MTPD) and an officer of the Washington Metropolitan Area Transit Authority

---

[1] A copy of this pleading with amendments identified pursuant to District of Maryland Local Rule 103(6)(c) is attached as Exhibit A.

(WMATA). He holds final policymaking authority for WMATA and the MTPD. He is sued here in his official capacity.

3.      On information and belief, Defendant Figaro Estime ("Officer Estime") is an adult citizen of Maryland. He is an officer of the MTPD and an employee of WMATA.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff raises claims under federal law, specifically 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

5.      Venue is appropriate in this District because the acts, events, and omissions giving rise to Plaintiff's claims occurred in Maryland.

6.      To the extent that the notice provisions of the Maryland Tort Claims Act, Md. Code, State Gov't § 12-101 *et seq*., apply to this case, Plaintiff provided the required notice on December 11, 2019.

## FACTS COMMON TO ALL COUNTS

7.      The Washington Metropolitan Area Transit Authority (WMATA) is an interstate compact agency of the District of Columbia, the Commonwealth of Virginia, and the State of Maryland. WMATA operates the Metrorail system ("Metro") in these three jurisdictions.

8.      The Metro Transit Police Department (MTPD) is the policing agency of WMATA and is responsible for enforcing laws and regulations within and near the Metro.

9.      On or about April 11, 2018, Mr. Davis was riding the Metro. He exited the train at the Suitland Metro station in Suitland, Maryland.

10.     WMATA uses pre-loaded fare cards called SmarTrip cards for access to the Metro system. Passengers are required to tap their SmarTrip card to enter the system and again on leaving the system. Fares vary based on which station the passenger enters at and leaves the system.

11.     WMATA has no restriction on the number of SmarTrip cards that may be purchased, carried, or loaded by an individual, and many passengers carry multiple cards.

12.     On April 11, 2018, Mr. Davis was carrying several SmarTrip cards, but was unsure of which card he had used to enter the system at the beginning of his ride. He went to find a station manager, who would be able to tell him which card he could use to exit. However, no station manager was present at the Suitland station.

13.     As Mr. Davis searched for a station manager, other customers nearby appeared to be having trouble with the exit fare machine, which allows passengers with insufficient funds to add value to their SmarTrip cards so that they can exit the system.

14.     Because no station manager was present, one of these customers asked Officer Estime, who was standing nearby, for assistance with the machine.

15.     Officer Estime was apparently unable or unwilling to assist. After an argument between Officer Estime and one of the customers, the customers who had insufficient fare began exiting the station through the emergency exit gate.

16.     Officer Estime made no effort to stop the customers as they left.

17.     Seeing this, Mr. Davis, who had been unable to locate a station manager, followed the other customers through the emergency exit gate.

18.     Despite his apparent lack of concern for the other customers' behavior, Officer Estime immediately followed Mr. Davis, stopped him, and instructed him to return to the exit gate and tap his SmarTrip card to leave.

19.    Mr. Davis explained that he had been unable to determine which card to use, and noted that other customers had also left through the gate.

20.    At all times, Mr. Davis was calm and compliant, but Officer Estime became aggressive when Mr. Davis explained the issue.

21.    Officer Estime pulled out his MTPD-issued pepper spray and instructed Mr. Davis again to return to the gate and tap his card.

22.    Mr. Davis, not wanted to be pepper sprayed and hoping that Officer Estime would understand the problem, complied.

23.    Upon returning to the gate, Mr. Davis handed one of his SmarTrip cards to Officer Estime, who tested the card and saw that it had not been used that day.

24.    Officer Estime then accused Mr. Davis of fare evasion, and demanded that Mr. Davis hand over his ID.

25.    Mr. Davis attempted to explain that he, like many Metro customers, had several SmarTrip cards; however, Officer Estime became increasingly belligerent, interrupting Mr. Davis and yelling "ID, ID" repeatedly.

26.    Officer Estime never made any effort to test Mr. Davis's other SmarTrip cards to determine if Mr. Davis had actually evaded the fare.

27.    At this time, Mr. Davis was holding his wallet—containing several SmarTrip cards and his ID—open in both hands as he attempted to explain the issue to Officer Estime. Security footage from the station's cameras shows that Mr. Davis was speaking calmly and made no sudden or aggressive movements toward Officer Estime.

28.    Despite Mr. Davis's calm and nonthreatening demeanor, Officer Estime, without warning or provocation, pepper sprayed Mr. Davis in the face.

29.    Mr. Davis, shocked and in pain, asked Officer Estime why he had "maced" him. Fearing that Officer Estime would escalate his already excessive use of force, Mr. Davis then called out to bystanders to record the interaction.

30.    This request apparently angered Officer Estime, who pepper sprayed Mr. Davis a second time, again without warning or provocation.

31.    Officer Estime then attempted to handcuff Mr. Davis. However, Mr. Davis, unable to focus on anything except the searing pain in his eyes caused by the pepper spray, was attempting to rub the spray out of his eyes and did not understand what Officer Estime wanted.

32.    Rather than attempting to gain compliance through verbal or non-violent means, Officer Estime pulled out his MTPD-issued baton and began beating Mr. Davis.

33.    Officer Estime can be seen on the security footage continuing to beat Mr. Davis with the baton despite the fact that Mr. Davis offered no resistance other than flinching at the blows.

34.    Officer Estime arrested Mr. Davis and charged him with theft of WMATA services and possession of counterfeit currency with unlawful intent.

35.    Prior to charging Mr. Davis with these crimes, Officer Estime made no effort whatsoever to test Mr. Davis's other SmarTrip cards or otherwise determine if Mr. Davis had actually stolen WMATA services.

36.    In his report of the incident, Officer Estime made several false statements, including that Mr. Davis "bladed his body and balled up his fists" prior to Officer Estime's first use of pepper spray; that there was only a single use of pepper spray; and that Mr. Davis "resisted arrest" until after Officer Estime finished beating him with the baton.

37.    Security footage clearly contradicts the statements made by Officer Estime in his report.

38.    On August 14, 2018, Mr. Davis's case was heard by the District Court of Maryland for Prince George's County. After a bench trial, Judge Scott Michael Carrington found Mr. Davis not guilty of both charges.

39.    During the pendency of the trial, on July 10, 2018, Mr. Davis filed a complaint with WMATA and the MTPD regarding Officer Estime's use of force.

40.    On August 16, 2018, two days after Mr. Davis's acquittal, Defendant Chief Pavlik responded to Mr. Davis's complaint in a letter.

41.    Chief Pavlik's letter informed Mr. Davis that, after a "thorough investigation" which purportedly included a review of the security footage that clearly contradicts Officer Estime's version of events, MTPD had determined that "the force used was in compliance with [MTPD's] policies, guidelines, and training standards."

42.    In other words, it is the position of Chief Pavlik, the MTPD, and WMATA that multiple deployments of pepper spray and a severe beating of an unarmed and compliant individual suspected of no crime or, at most, failing to pay a transit fare is "not . . . excessive force."

### COUNT 1
**Violation of 42 U.S.C. § 1983 – Excessive Force**
**(Against Defendant Figaro Estime)**

43.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully alleged herein.

44.    Plaintiff has a protected liberty interest in his freedom of movement, his bodily integrity, and his personal security.

45.    At all relevant times, Defendant Figaro Estime was employed as a law enforcement officer with the MTPD by WMATA.

46.    At all relevant times, Officer Estime was on duty, wearing a police uniform, carrying a department-issued sidearm, and using and carrying department-issued control devices, and identified himself to Plaintiff and bystanders as a police officer.

47.    Officer Estime was therefore acting under color of state law at all relevant times.

48.    Acting under color of state law, Officer Estime twice deployed pepper spray on Plaintiff and repeatedly struck Plaintiff with a baton, despite having no reasonable cause to fear for his safety or the safety of any other person, while Plaintiff was neither fleeing nor resisting any lawful command.

49.    Officer Estime, through the actions described in the foregoing paragraphs, deprived Plaintiff of his clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution, including but not limited to his rights to be free from excessive force and unreasonable seizure.

50.    As a result of Officer Estime's actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendant Figaro Estime in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**COUNT 2**
**Violation of 42 U.S.C. § 1983 – Excessive Force**
**(Against Defendant Chief Pavlik)**

51.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully alleged herein.

52.    Chief Pavlik holds final decision-making authority with regard to the actions of the MTPD and WMATA.

53.    The conduct of Officer Estime as described above, including the use of excessive force and the deprivation of Plaintiff's constitutional rights, do not represent a single isolated, accidental, or peculiar incident, but occurred in the regular procedures followed by WMATA and the MTPD.

54.    Indeed, Chief Pavlik represented that it is the official position of WMATA and the MTPD that Officer Estime's conduct was pursuant to WMATA and MTPD policy and "was in compliance with [MTPD's] policies, guidelines, and training standards."

55.    WMATA's and MTPD's pattern and practice of countenancing and/or encouraging excessive force, as created, implemented, supervised, and/or approved by Chief Pavlik, represents a gross disregard for the constitutional rights of Plaintiff and the public, and was a direct and proximate cause of Plaintiff's injuries.

56.    Plaintiff's injuries were a highly predictable consequence of the pattern and practice described herein.

57.    As a result of WMATA's and MTPD's pattern and practice, as created, implemented, supervised, and/or approved by Chief Pavlik, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendant Ronald A. Pavlik, Jr., in his official capacity as Chief of the Metro Transit Police Department, in an amount exceeding

$75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

**COUNT 3**
**Violation of 42 U.S.C. § 1983 – Deliberate Indifference**
**(Against Defendant Chief Pavlik)**

58.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully alleged herein.

59.     Defendant Chief Pavlik establishes, implements, and/or approves standards, policies, and practices governing MTPD officers' interactions with the public and use of force, including the deployment of pepper spray and control devices.

60.     A highly predictable consequence of failing to establish standards, policies, and practices that sufficient protect against the excessive use of force is an increased risk that officers will violate citizens' constitutional or statutory rights.

61.     Chief Pavlik displayed deliberate indifference to this risk by establishing, implementing, and/or approving standards, policies, and practices that do not adequately protect against the excessive use of force, and by ratifying or approving officers' excessive uses of force against citizens.

62.     Chief Pavlik's deliberate indifference to the risk of harm to citizens directly and proximately caused Plaintiff's injuries.

63.     As a result of Chief Pavlik's deliberate indifference, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendant Ronald A. Pavlik, Jr., in his official capacity as Chief of the Metro Transit Police Department, in an amount exceeding

$75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 4
### Violation of Article 26 of the Maryland Declaration of Rights – Excessive Force and Deprivation of Liberty
### (Against Defendant Figaro Estime)

64.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully alleged herein.

65.    By the actions detailed above, Officer Estime deprived Plaintiff of his rights under Article 26 of the Maryland Declaration of Rights, including but not limited to the right to freedom from unlawful seizure and the right to bodily integrity.

66.    Officer Estime's actions were without provocation or legal justification and with the intent to violate Plaintiff's civil rights, including but not limited to his rights under Article 26.

67.    As a direct and proximate result of Officer Estime's actions, Plaintiff suffered damages, including but not limited to pain and suffering, assault, battery, mental and emotional distress, and deprivation of constitutional rights.

WHEREFORE, Plaintiff demands judgment against Defendant Figaro Estime in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT 5
### Battery
### (Against Defendant Figaro Estime)

68.    Plaintiff incorporates and realleges the foregoing paragraphs as if fully alleged herein.

69.    Officer Estime repeatedly and intentionally contacted Plaintiff in a harmful and offensive manner using pepper spray and a baton.

70.     Plaintiff did not consent to any of these contacts.

71.     The contacts were not justified by any legitimate police necessity.

72.     Officer Estime undertook these contacts deliberately, with ill will and actual malice.

73.     As a direct and proximate result of these contacts, Plaintiff suffered damages, including but not limited to pain and suffering and mental and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant Figaro Estime in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## <u>COUNT 6</u>
### False Arrest
### (Against Defendant Figaro Estime)

74.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully alleged herein.

75.     The "probable cause" alleged by Officer Estime for Plaintiff's arrest was Officer Estime's belief that Plaintiff had committed theft of services by obtaining WMATA services without payment.

76.     Officer Estime charged Plaintiff under Md. Code, Criminal Law § 7-104, which prohibits obtaining services "by deception" or "with knowledge that the services are provided without the consent of the person providing them."

77.     Plaintiff did not engage in any deception; he openly walked through the gate, in clear view of Officer Estime, following the example of other patrons who were unable to pay their fares due to WMATA's failure to make a station manager or an exit fare machine available. When confronted by Officer Estime, Mr. Davis explained that he did not intend to leave without paying, but was unable to pay because no station manager was available.

78.     Moreover, Mr. Davis had no reason to know that WMATA did not consent to his leaving through the exit gate, as Officer Estime—a WMATA employee—had just watched several other patrons leave through the exit gate while making no move to stop them.

79.     Officer Estime therefore had no probable cause to charge Mr. Davis under § 7-104.

80.     Nevertheless, Officer Estime deprived Plaintiff of his liberty and freedom of movement.

81.     Plaintiff did not consent to this deprivation.

82.     Officer Estime's deprivation of Plaintiff's liberty was without any legal justification or legitimate police necessity.

83.     As a direct and proximate result of Officer Estime's actions, Plaintiff suffered damages, including but not limited to pain and suffering and mental and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant Figaro Estime in an amount exceeding $75,000, plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of any and all claims so triable.

/s/ Timothy F. Maloney
By: Timothy F. Maloney

Respectfully submitted this 20th day of May, 2020,

_____/s/Timothy F. Maloney_____

Timothy F. Maloney
Nicholas N. Bernard
Joseph Greenwald & Laake, P.A
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200 (tel.)
(301) 220-1214 (fax)
*Counsel for Plaintiffs*
