**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |
|---|---|
| STEVEN A. DAVIS, | * |
| **Plaintiff,** | * |
| | * |
| v. | *        Case No.: GJH-20-0547 |
| | * |
| RONALD A. PAVLIK, JR., *et al.* | * |
| **Defendants.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Steven Davis brings this action against Defendants Chief Ronald A. Pavlik, Jr., in his official capacity as Chief of the Metro Transit Police Department, and Officer Figaro Estime, alleging claims of Excessive Force, in violation of 42 U.S.C. § 1983 (Counts I and II), Deliberate Indifference, in violation of 42 U.S.C. § 1983 (Count III), Excessive Force and Deprivation of Liberty, in violation of Article 26 of the Maryland Declaration of Rights (Count IV), Battery (Count V), and False Arrest (Count VI). ECF No. 2. Pending before the Court is Defendants' Motion to Dismiss, which seeks to dismiss all counts against Defendant Pavlik and to dismiss the False Arrest count against Defendant Estime. ECF No. 21. No hearing is necessary. Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion is granted.[1]

---

[1] Defendants' earlier Motion to Dismiss, ECF No. 15, is denied as moot based on Plaintiff's filing of the Amended Complaint, ECF No. 16.

## I.    BACKGROUND[2]

On April 11, 2018, Plaintiff Steven Davis was riding the Metro and exited the train at the Suitland Metro station in Suitland, Maryland. ECF No. 16 ¶ 9.[3] He was carrying several SmarTrip cards and was unsure which one he used to enter the system at the start of his ride. *Id.* ¶ 12. He looked for a station manager for help, but a station manager was not present. *Id.* ¶¶ 13–14. Another customer having trouble with his SmarTrip card asked Defendant Officer Figaro Estime for assistance, and, according to Plaintiff, Defendant Estime was "was apparently unable or unwilling to assist." *Id.* ¶¶ 14–15. After Defendant Estime and another customer got into an argument, customers began exiting the station through the emergency exit gate. *Id.* ¶ 15. Defendant Estime did not stop them. *Id.* ¶ 16. Plaintiff followed the other customers through the emergency exit gate, but Defendant Estime stopped him and told him to return to the exit gate and tap his SmarTrip card. *Id.* ¶¶ 17–18. Plaintiff told him he was not sure which card to use. *Id.* ¶ 19. Defendant Estime then pulled out his Metro Transit Police Department ("MTPD")-issued pepper spray and repeated the instruction to return to the gate and tap his card. *Id.* ¶ 21. Plaintiff returned to the gate and handed one of his cards to Defendant Estime, who tested it and saw it had not been used that day. *Id.* ¶ 23. Defendant Estime accused Plaintiff of fare evasion and requested his ID. *Id.* ¶ 24. Plaintiff, holding his wallet open, which contained several SmarTrip cards and his ID, attempted to explain the problem, but Defendant Estime, allegedly without provocation, pepper sprayed Plaintiff twice in the face, beat Plaintiff with an MTPD-issued baton, and arrested him. *Id.* ¶¶ 27–34. Defendant Estime charged him with theft of Washington Metropolitan Area Transit Authority ("WMATA") services and possession of counterfeit

---

[2] Unless stated otherwise, all facts are taken from Plaintiff's Amended Complaint or documents attached to and relied upon in the Amended Complaint and are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

currency with unlawful intent. *Id.* ¶ 34. On August 14, 2018, Plaintiff was found not guilty of both charges in the District Court of Maryland for Prince George's County. *Id.* ¶ 38.

On July 10, 2018, Plaintiff filed a complaint with WMATA and MTPD regarding Defendant Estime's use of force. *Id.* ¶ 39. On August 16, 2018, Defendant Ronald A. Pavlik, Jr., Chief of MTPD and an officer of WMATA, responded to Mr. Davis's complaint in a letter. *Id.* ¶ 40. Chief Pavlik stated that, after a thorough investigation, the MTPD determined, "the force used was in compliance with [MTPD's] policies, guidelines, and training standards." *Id.* ¶ 41. On February 28, 2020, Plaintiff filed an eight-count Complaint in this Court against Defendants WMATA, MTPD, and Officer Estime. ECF No. 1. Defendants filed a Motion to Dismiss on May 6, 2020. ECF No. 15. Plaintiff filed an Amended Complaint on May 20, 2020, asserting claims against Chief Pavlik, in his official capacity, in place of Defendants WMATA and MTPD. ECF No. 16. Defendants filed a second Motion to Dismiss on June 9, 2020. ECF No. 21. Plaintiff filed a response on June 23, 2020, ECF No. 23, and Defendants filed a reply on July 6, 2020, ECF No. 24.

The pending Motion to Dismiss seeks dismissal of all counts against Defendant Pavlik based on sovereign immunity and dismissal of the False Arrest count against Defendant Estime for failure to state a claim.

## II.     SOVEREIGN IMMUNITY

### A.  Standard of Review

Defendants move to dismiss the claims against Defendant Pavlik on the grounds that he is immune from suit under the doctrine of sovereign immunity. ECF No. 21-1 at 2. A claim of sovereign immunity is appropriately decided through a motion to dismiss for lack of subject-matter jurisdiction brought under Rule 12(b)(1) because "[s]overeign immunity strips the court of jurisdiction[.]" *Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014); *see also Smith v.*

*WMATA*, 290 F.3d 201, 205 (4th Cir. 2002) ("To the extent [WMATA's] complained-of actions fall within its cloak of immunity, we lack subject matter jurisdiction over such claims."); *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) (noting that "sovereign immunity claims are jurisdictional").

"A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr.*, 776 F.3d 271, 272 (4th Cir. 2015). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Where jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steele Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 19 L.Ed. 264 (1868)).

**B.  Discussion**

Defendants move to dismiss the claims against Defendant Pavlik for lack of jurisdiction based on sovereign immunity. ECF No. 21-1 at 2. Plaintiff does not seriously contest this point, only arguing in a footnote that, to the extent Defendant Pavlik is asserting WMATA's sovereign immunity, under Article V, Section 12 of the WMATA Compact, WMATA "may: (a) Sue and

be sued[.]" Md. Code. Ann. Transp. § 10-204(12).[4] However, while WMATA may "sue and be sued," limitations in Section 80 of the Compact clarify that WMATA "shall not be liable for any torts occurring in the performance of a governmental function." Md. Code. Ann. Transp. § 10-204(80). The "threshold question," therefore, "is whether WMATA's operation of the Transit Police Force constitutes a governmental or a proprietary function within the terms of the Compact." *Morris v. WMATA*, 781 F.2d 218, 220 (D.C. Cir. 1986).[5] Governmental functions, as opposed to proprietary ones, are activities that "amount[ ] to 'quintessential' governmental function[s], like law enforcement." *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *accord Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997). "WMATA's police activities are an exercise of governmental function" for which WMATA has not waived sovereign immunity. *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987). Accordingly, WMATA cannot be sued for torts related to the performance of its police activities. Because Plaintiff brought suit here against Chief Pavlik in his official capacity, WMATA's sovereign immunity applies to him as well and bars the claims brought against him. *See Gray v. Unidentified Metro Transit Police Officers 1, 2, 3*, No. CV DKC 14-2939, 2017 WL 528429, at *3–4 (D. Md. Feb. 9, 2017) ("WMATA officials are immune from suit for law enforcement actions like those underlying this case."). Therefore, Plaintiff's claims against Defendant Pavlik are dismissed for lack of jurisdiction.

Moreover, Plaintiff's claims against Defendant Pavlik are brought under Section 1983, which states, in relevant part, that "every *person*" who violates the Constitutional rights of

---

[4] WMATA is a transit authority created by interstate compact among the District of Columbia, Maryland, and Virginia, which was approved by Congress. In Maryland, this compact ("WMATA Compact") is codified as Md. Code. Ann. Transp. § 10-204.
[5] "When addressing the WMATA Compact, the Fourth Circuit looks to the District of Columbia Circuit for interpretive aid, striving to maintain consistency between the only two federal circuits likely to preside over WMATA Compact issues." *Hutcherson v. WMATA*, CIV. 08-3044-RWT, 2009 WL 2168998, at *3 (D. Md. July 16, 2009).

another shall be liable to that party. 42 U.S.C. § 1983 (emphasis added). "[G]overnment officials

sued in their official capacities for monetary damages are not persons under Section 1983."

*Hawkins v. Washington Metro. Area Transit Auth.,* 311 F. Supp. 3d 94, 108 (D.D.C. 2018)

(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Thus, even if Plaintiff's

claims against Defendant Pavlik were not barred by sovereign immunity, they would be

dismissed for failure to state a claim upon which relief can be granted because Defendant Pavlik,

named in his official capacity, is not a person and cannot be sued under 42 U.S.C. § 1983.

## III.   FALSE ARREST – FAILURE TO STATE A CLAIM

### A.  Standard of Review

Defendants further move to dismiss the false arrest claim against Defendant Estime for

failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of

Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss invoking 12(b)(6),

"a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* at 663. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S.

at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

not do.").

A court must consider all well-pleaded allegations in a complaint as true, *see Albright v.

Oliver*, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most

favorable to the plaintiff, *see Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005). The

Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County*

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations,

*Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any

reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th

Cir. 1979). "Thus, 'in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) a court

must determine whether it is plausible that the factual allegations in the complaint are enough to

raise a right to relief above the speculative level.'" *Monroe v. City of Charlottesville*, 579 F.3d

380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009)).

### B. Discussion

"A claim for false arrest alleges that a warrantless arrest lacked probable cause." *Smith v.*

*Munday*, 848 F.3d 248, 257 (4th Cir. 2017). "Probable cause exists if 'at that moment the facts

and circumstances within [the officers'] knowledge and of which they had reasonably

trustworthy information were sufficient to warrant a prudent man in believing that the [suspect]

had committed or was committing an offense.'" *United States v. Fisher*, 97 F.3d 1449 (4th Cir.

1996) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alterations in *Fisher*). "Whether probable

cause exists in a particular situation therefore always turns on two factors in combination: the

suspect's conduct as known to the officer, and the contours of the offense thought to be

committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). An arrest is

valid even if probable cause existed only for a crime different than the one actually charged. *See*

*United States v. Bookhardt*, 277 F.3d 558, 564–67 (D.C. Cir. 2002).

According to the Complaint, Defendant Estime charged Plaintiff under Md. Code,

Criminal Law § 7-104, which prohibits obtaining services "by deception" or "with knowledge

that the services are provided without the consent of the person providing them." ECF No. 1 ¶

76. The quoted language is specifically drawn from Md. Code, Criminal Law § 7-104(e). However, Defendants point to the docket for case number 0E00657958 on the Maryland Judiciary's website, casesearch.courts.state.md.us,[6] which states Plaintiff was charged with "§ 7-104.3," described as "theft less than $100." ECF No. 24 at 5 n.2. Maryland's Criminal Law Code does not include a § 7-104.3, but it appears that this is meant to reference § 7-104(g)(3), which criminalizes "theft of property or services with a value of less than $100." Md. Code, Criminal Law § 7-104(g)(3).

Based on the allegations in the Complaint, there was probable cause to arrest Plaintiff under either provision. Plaintiff concedes that he exited the fare-paid area of the transit station through the emergency exit door without paying. *See* ECF No. 23 at 5; ECF No. 1 ¶ 17. He argues, however, that probable cause did not exist because (1) Plaintiff believed WMATA had consented to him exiting without paying because others were also exiting through that door after their SmarTrip cards had not worked at the exit gates, and Officer Estime did not stop them; and (2) Plaintiff told Officer Estime that he was carrying multiple SmarTrip cards and Officer Estime therefore knew that one of the cards he had not tested could be the one used to enter the station. ECF No. 23 at 5–6. Neither argument is persuasive.

First, that Officer Estime did not stop other passengers unlawfully exiting the fare-paid area without paying does not imply that WMATA consented to this practice and, even to the

---

[6] Courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment."). Specifically, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment," *Brown v. Ocwen Loan Servicing*, LLC, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (4th Cir. 2016), including dockets on the Maryland Judiciary's website, *see, e.g.*, *Singletary v. Nationstar Mortg.*, LLC, No. CV TDC-14-3204, 2016 WL 1089419, at *1 n.2 (D. Md. Mar. 21, 2016). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds by Reed v. Town of Gilbert, Ariz.*, — U.S. —, 135 S. Ct. 2218 (2015), *as recognized in Cahaly v. Larosa*, 796 F. 3d 399 (4th Cir. 2015)).

extent it could conceivably provide a defense, it does not negate probable cause that the offense

was committed. Second, that Plaintiff told Officer Estime he had additional SmarTrip cards does

not defeat probable cause, as "an officer is not obligated to 'rule out' the validity of a suspect's

claims of innocence prior to arresting him." *Cutchin v. D.C.*, 369 F. Supp. 3d 108, 123 (D.D.C.

2019); *see also D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018) ("[P]robable cause does not require

officers to rule out a suspect's innocent explanation for suspicious facts"). That Plaintiff could

possibly explain his actions does not mean there was not probable cause to arrest him. *See Laster

v. Burks*, No. 1:04-CV-2282-CC, 2006 WL 8431549, at *4 (N.D. Ga. Jan. 31, 2006) (finding

probable cause existed where a Metropolitan Atlanta Rapid Transit Authority Police officer

"observed the Plaintiff lingering around the entrance of the station for many minutes" and "enter

the station without paying a fare . . . through the handicap gate" even though Plaintiff had been

instructed to do so by the operator); *Mazurkiewicz v. New York City Transit Auth.*, 810 F.Supp.

563, 568 (S.D.N.Y. 1993) (concluding that the New York City Transit Police officers who

observed the plaintiff step over a turnstile without paying his fare via token had probable cause

to arrest him for theft of services despite the "plaintiff's explanation that the turnstile was broken

and that he never intended to steal a subway ride" and his offer of a token to one of the arresting

officers). Ultimately, a reasonable person could have believed Plaintiff was committing an

offense when he exited the fare-paid area through the emergency gate without paying.

Accordingly, probable cause supported the arrest, and Plaintiff's false arrest claim is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss filed on May 6, 2020, ECF

No. 15, is denied as moot. Defendants' Motion to Dismiss filed on June 9, 2020, ECF No. 21, is

granted. A separate Order follows.


Dated: <u>December 21, 2020</u>                                   <u>          /s/                                    </u>

                                                                   GEORGE J. HAZEL
                                                                   United States District Judge