**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ) | |
| STEVEN A. DAVIS,                          ) | |
| ) | |
|         Plaintiff,                        ) | Civil Action No. 20-cv-00547-LKG |
| ) | |
| v.                                        ) | Dated:  September 7, 2022 |
| ) | |
| RONALD A. PAVLIK, JR., *et al.*,          ) | |
| ) | |
|         Defendants.                       ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

The remaining claims in this civil rights action involve allegations that Officer Figaro Estime used excessive force when he arrested plaintiff on April 11, 2018, in violation of 42 U.S.C. § 1983 and Maryland law.  *See generally* Am. Compl., ECF No. 27.  Defendant has moved for summary judgment on these remaining claims, pursuant to Fed. R. Civ. P. 56.  *See* Def. Mot., ECF No. 39; Def. Mem., ECF No. 39-1.  The motion is fully briefed.  *See* Pl. Resp., ECF No. 43; Def. Reply, ECF No. 46.  No hearing is necessary to resolve this motion.  *See* L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court **DENIES** defendant's motion for summary judgment.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In his remaining claims in this civil rights action, plaintiff, Steven A. Davis, alleges that

---

[1] The facts recited in this Memorandum Opinion and Order are taken from defendant's statement of undisputed material facts ("Def. SOF"); the amended complaint ("Am. Compl."); defendant's motion for summary judgment ("Def. Mot."); and memorandum in support thereof ("Def. Mem."); and plaintiff's response in opposition thereto ("Pl. Resp.").  Plaintiff has not filed a counterstatement of undisputed material facts, but he includes a statement of facts in his response in opposition to defendant's motion for summary judgment.  *See* Pl. Resp. at 1-8.  Unless otherwise stated, the facts recited herein are undisputed.

defendant, Officer Figaro Estime of the Metro Transit Police Department ("MTPD") and the Washington Metropolitan Area Transit Authority ("WMATA"), used excessive force while arresting him at the Suitland Metro Station on April 11, 2018 (the "April 11, 2018, Incident"). *See generally* Am. Compl.  Specifically, plaintiff asserts the following three claims against Officer Estime:  (1) excessive use of force, in violation of 42 U.S.C. § 1983 (Count I); (2) violation of Article 26 of the Maryland Declaration of Rights (Count IV); and (3) battery (Count V).[2]  *See id.* at ¶¶ 43-50, 64-73.  As relief, plaintiff seeks, among other things, to recover monetary damages.  *Id.* at Prayer for Relief.

As background, on April 11, 2018, plaintiff was a passenger on WMATA's Metrorail system (the "Metro") when he exited the Metro at the Suitland Metro Station.  Def. SOF at ¶ 1, ECF No. 39-2.  It is undisputed that plaintiff left the Suitland Metro Station without paying his fare.  *Id.* at ¶ 2; Pl. Resp. at 2-3.

Upon observing plaintiff exiting the Metro Station without paying his fare, Officer Estime called for plaintiff to return to the fare gates.  Def. SOF at ¶ 18; s*ee also* Def. Ex. 2 (Elapsed Time 03:08 – 04:25).  It is undisputed that plaintiff ignored Officer Estime and kept walking out as Officer Estime followed him.  Def. SOF at ¶ 19; Pl. Resp. at 3.

After Officer Estime instructed plaintiff to return to the fare gates to process his fare card, plaintiff followed Officer Estime back into the Suitland Metro Station.  Def. SOF at ¶¶ 20-22; *see also* Def. Ex. 2 (Elapsed Time 05:10-06:25); Def. Ex. 3 at 63:7-9.  Plaintiff tapped his fare card at the fare gate, but the fare gate did not open.  Def. SOF at ¶ 23; Def. Ex. 3 at 64:3-5. Thereafter, Officer Estime inspected plaintiff's fare card and confirmed that plaintiff had not used the fare card on that day.  Def. SOF at ¶ 24.  And so, Officer Estime informed plaintiff that he would be issued a citation for failure to pay his fare.  *Id.* at ¶ 25.

It is undisputed that plaintiff did not accept the citation.  *Id.* at ¶ 26; Pl. Resp. at 3.  Given this, Officer Estime asked plaintiff for his identification and advised plaintiff that he would be arrested if he failed to cooperate with the citation process.  Def. SOF at ¶ 27.  After Officer

---

[2] On December 21, 2020, the Court issued a Memorandum Opinion and Order dismissing all claims against Ronald A. Pavlik, Jr. and the MTPD, and the false arrest claim against Officer Estime.  *See* Dec. 21, 2020, Mem. Op., ECF No. 25; *see also* Dec. 21, 2020, Order, ECF No. 26.

Estime repeated his request for identification multiple times without success, he informed plaintiff that he was under arrest.  *Id.* at ¶¶ 27-30; Pl. Resp. at 3-4.

What occurred thereafter is in dispute.  Officer Estime contends that, after he informed plaintiff that he was under arrest, "[p]laintiff took a combative stance against [him] by 'blading' his body, which is also characterized as a fighting stance."  Def. SOF at ¶ 30; *see also* Def. Ex. 1 at 30:11-22.  Officer Estime also contends that he "immediately recognized that [p]laintiff displayed 'pre-assaultive' behavior and [he] withdrew his departmental issued pepper-spray and called for back-up."  Def. SOF at ¶ 31; *see also* Def. Ex. 2 (Elapsed Time 08:21-08:48).  In this regard, Officer Estime alleges that plaintiff advanced towards his position and that he perceived that plaintiff's hand was clenched as to make a fist.  Def. SOF at ¶ 33.

It is undisputed that Officer Estime pepper sprayed plaintiff two times.  *Id.* at ¶ 34; Pl. Resp. at 4, 8; *see also* Def. Ex. 2 (Elapsed Time 08:21-08:48).  It is also undisputed that, after pepper spraying plaintiff, Officer Estime took out his handcuffs and attempted to handcuff plaintiff to place him under arrest.  Def. SOF at ¶ 35; Pl. Resp. at 8; *see also* Def. Ex. 2 (Elapsed Time 09:23).

Officer Estime maintains that when he attempted to place handcuffs on plaintiff, plaintiff pushed him away and maintained an aggressive stance towards him.  Def. SOF at ¶ 36.  It is undisputed that Officer Estime withdrew his baton and struck plaintiff six or seven times across the thigh and buttocks.  *Id.* at ¶ 38; Pl. Resp. at 5; *see also* Def. Ex. 2 (Elapsed Time 09:23-10:10).

Plaintiff has a different view about his interactions with Officer Estime during the moments leading up to his arrest.  Plaintiff maintains that Officer Estime "was immediately aggressive toward [him]" and that Officer Estime "began to threaten [him], telling him that he would 'lock [him] up' and directed [p]laintiff to return to the station."  Pl. Resp. at 3; *see also* Pl. Ex. 1 at 62:10-18.  Plaintiff also contends that Officer Estime, "without warning brandished his Mace spray."  Pl. Resp. at 3; *see also* Pl. Ex. 1.  In addition, plaintiff contends that he "was holding his wallet open with both hands, looking for his other SmartTrip and identification cards [when Officer Estime], without warning, explanation, or provocation, sprayed him with his Mace."  Pl. Resp. at 4; *see also* Pl. Ex. 1. at 64:6-19, 88:18- 89:11.

Plaintiff also maintains that he was not resisting arrest or posing any threat to Officer

Estime when these events occurred.  Pl. Resp. at 4-5.  And so, plaintiff maintains that Officer Estime's use of a baton to strike his legs "approximately seven to ten times" was "unprovoked and unnecessary to effectuate" his arrest.  *Id*. at 5; *see also* Pl. Ex. 1 at 64:20-65:16, 144:18-22; Pl. Ex. 2 at 8.

It is undisputed that Officer Estime arrested plaintiff and charged him with theft of WMATA services and possession of counterfeit currency with unlawful intent.  Def. SOF at ¶ 41; Pl. Resp. at 8.  The parties also agree that there is video footage of the April 11, 2018, Incident, which captures most of plaintiff's encounter with Officer Estime.  *See generally* Pl. Resp.; Def. Reply.  A careful review of the video footage reveals, however, that plaintiff is not visible during the critical moments leading to Officer Estime's use of pepper spray.  Def. Ex. 2 (Elapsed Time 08:20-08:48).

### B.      Procedural Background

Plaintiff commenced this civil rights matter on February 28, 2020.  *See* Compl., ECF No. 1.  On May 20, 2020, plaintiff filed an amended complaint.  *See* Am. Compl.

On November 1, 2021, defendant filed a motion for summary judgment and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56.  *See* Def. Mot.; Def. Mem. Plaintiff filed a response in opposition to defendant's motion on November 29, 2021.  *See* Pl. Resp.  Defendant filed a reply in support of his motion on December 21, 2021.  *See* Def. Reply.

Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.      Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.

*Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

### B.      Excessive Use Of Force Claims

The United States Supreme Court has held that excessive use of force claims pursuant to the Fourth Amendment should be analyzed under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989).[3] The United States Court of Appeals for the Fourth Circuit has held that, in "considering the reasonableness of an officer's actions, [the Court] must consider the facts at the moment that the challenged force was employed." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citation omitted). And so, the Court must judge an officer

---

[3] Plaintiff's Maryland Declaration of Rights and battery claims are analyzed using the same standards as his excessive use of force claim. *See Hines v. French*, 852 A.2d 1047, 1069 (Md. Ct. Spec. App. 2004) ("The standards for analyzing claims of excessive force are the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment of the United States Constitution.") (citation omitted); *see also Randall v. Peaco*, 927 A.2d 83, 89 (Md. Ct. Spec. App. 2007) (explaining that claims pursuant to Maryland Declaration of Rights Articles 24 and 26 are "assessed under Fourth Amendment jurisprudence, rather than notions of substantive due process, precisely like the analysis employed for claims brought under 42 U.S.C. § 1983.") (citations omitted); *Richardson v. McGriff*, 762 A.2d 48, 56 (Md. 2000) (explaining that claims under Article 26 of the Maryland Declaration of Rights and common law battery claims are governed by the standards applied to excessive use of force claims under federal law).

defendant's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The Supreme Court has also held that determining whether a defendant officer used an excessive level of force requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citation and internal quotation marks omitted).  Specifically, this Court should consider the following three factors in assessing an excessive use of force claim:  (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted).  The Supreme Court has cautioned, however, that the Court should not "apply this standard mechanically," because there could be other "types of objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  Given this, the Court must analyze whether "the totality of the circumstances" justified the level of force used in assessing an excessive use of force claim. *Smith*, 781 F.3d at 101 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

###   C.      Qualified Immunity

Lastly, the Supreme Court has explained that the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  And so, it is well-established that "[t]he doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012) (citation omitted).  In this regard, the Fourth Circuit has held that the Court should apply a two-step test when determining whether a defendant is entitled to qualified immunity. *See Wilson v. Prince George's Cnty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018); *see also Pearson*, 555 U.S. at 232.  First, the Court inquires whether "the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the [defendant's] conduct violated the plaintiff's constitutional right." *Wilson*, 893 F.3d at 219 (citation omitted).  Second, the

Court must determine whether "the right at issue was 'clearly established' at the time of [defendant's] conduct." *Id.* (citation omitted).

## IV.    ANALYSIS

Officer Estime has moved for summary judgment in his favor on the remaining Section 1983 and Maryland state law claims in his action for two reasons. *See* Def. Mot.; Def. Mem. First, Officer Estime argues that the undisputed material facts in this case show that his use of force was not excessive, because he used objectively reasonable force. Def. Mem. at 2. Second, Officer Estime also argues that he is entitled to qualified immunity "as to plaintiff's constitutional claim for excessive force under Section 1983," because there is no clearly established law prohibiting his use of pepper spray and baton strikes under circumstances where: (1) plaintiff committed a misdemeanor in his presence; (2) plaintiff refused to comply with his order to pay his fare; (3) plaintiff refused to comply with his lawful requests for plaintiff to provide his identification; and (4) plaintiff refused to comply with his orders to turn around and present his hands for handcuffing. *Id.* at 2-3.

Plaintiff counters that summary judgment is not appropriate in this case, because Officer Estime's use of force was not objectively reasonable. Pl. Resp. at 9-20. Plaintiff also argues that Officer Estime is not entitled to qualified immunity, because his actions violated a clearly established right. *Id.* at 20-27. And so, plaintiff requests that the Court deny Officer Estime's motion for summary judgment.[4] *Id.* at 27.

For the reasons that follow, a careful review of the evidence in this case shows that there are material facts in dispute regarding whether:  (1) plaintiff posed an immediate threat to Officer Estime during the moments preceding his use of pepper spray and (2) whether plaintiff resisted arrest. These facts are necessary for the Court to determine whether Officer Estime's use of force was objectively reasonable, based upon the specific circumstances of this case. These facts are also needed to determine whether Office Estime is entitled to qualified immunity. Given this, summary judgment is not appropriate on plaintiff's remaining claims. And so, the Court

---

[4] Plaintiff also requested a hearing on Officer Estime's motion for summary judgment. Pl. Resp. at 27. The Court has determined that no hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2021).

**DENIES** Officer Estime's motion for summary judgment.  Fed. R. Civ. P. 56.

### A.      Summary Judgment Is Not Appropriate On Plaintiff's Remaining Claims

Summary judgment is not warranted on plaintiff's Section 1983 and state law claims, because there are material facts in dispute regarding whether plaintiff posed an immediate threat to Officer Estime and whether plaintiff resisted arrest.  The Court may grant Officer Estime's motion for summary judgment only if there exists no genuine issue as to any material fact and Officer Estime is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate in this case.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

Officer Estime has not met his burden to show that he is entitled to summary judgment in his favor for two reasons.  First, there is a genuine factual dispute among the parties about what occurred during the moments before Officer Estime deployed pepper spray, which precludes entry of summary judgment.  To determine whether Officer Estime's use of force was objectively reasonable, the Court considers:  (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (3) "whether [plaintiff] is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396 (citation omitted).

Here, there are material facts in dispute about plaintiff's conduct before Officer Estime used his pepper spray that are needed to determine whether plaintiff posed an immediate threat to Officer Estime.  Notably, Officer Estime maintains that, immediately before he used his pepper spray:  (1) "[p]laintiff took a combative stance against [him] by 'blading' his body"; (2) plaintiff advanced towards his position; and (3) he perceived that plaintiff's hand was clenched as to make a fist.  Def. SOF at ¶¶ 30, 33.  Plaintiff maintains, however, that that he was fully compliant with Officer Estime's orders and that he did not make an aggressive motion toward Officer Estime during their interaction.  *See* Pl. Resp. at 14-16.  Given this, the parties significantly disagree about key facts related to plaintiff's conduct.

As both parties correctly observe, there is video footage of the encounter between Officer Estime and plaintiff. *See generally* Def. Ex. 2; Pl. Resp.; Def. Reply. But, plaintiff is not visible on this video during the critical moments before Officer Estime uses pepper spray. Def. Ex. 2 (Elapsed Time 08:20-08:48). Given this, the evidence before the Court does not resolve whether plaintiff "bladed his body" and advanced towards Officer Estime in the moments immediately preceding the use of force.

There are also material facts in dispute regarding whether plaintiff resisted arrest during his encounter with Officer Estime. As discussed above, one of the factors that the Court must consider in determining whether Officer Estime's use of force was objectively reasonable is "whether [plaintiff] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). Again, there is a factual dispute in this case about whether plaintiff resisted arrest during his encounter with Officer Estime.

In this regard, Officer Estime maintains that plaintiff pushed him away and maintained an aggressive stance towards him when he attempted to place handcuffs on plaintiff and to place plaintiff under arrest. Def. SOF at ¶ 36. But, plaintiff maintains that he was not resisting arrest or posing any threat to Officer Estime. Pl. Resp. at 4-5. Again, the video footage of this encounter is not helpful in resolving this dispute, because plaintiff cannot be seen during the critical moments when Officer Estime attempts to handcuff plaintiff and place him under arrest. Def. Ex. 2 (Elapsed Time 09:22-09:32).

Because there are facts in dispute about plaintiff's conduct during his encounter with Officer Estime, and these facts are needed to determine whether Officer Estime's use of force was objectively reasonable, summary judgment is not appropriate in this case. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 250. And so, the Court must DENY Officer Estime's motion for summary judgment. Fed. R. Civ. P. 56.

For similar reasons, summary judgment is not appropriate on the issue of whether Officer Estime is entitled to qualified immunity. To apply the doctrine of qualified immunity in this case, the Court must determine whether "the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that [Officer Estime's] conduct violated the plaintiff's constitutional right" and whether "the right was 'clearly established' at the time of [Officer Estime's] conduct." *See Wilson* , 893 F.3d at 219 (citation omitted); *see also Pearson*, 555 U.S.

at 231.  As discussed above, there are material facts in dispute in this case about whether plaintiff posed an imminent threat to Officer Estime and whether plaintiff resisted arrest that are needed to determine whether Officer Estime violated plaintiff's constitutional right.  And so, the Court must also DENY Officer Estime's motion for summary judgment on the issue of qualified immunity.  Fed. R. Civ. P. 56.

## V.    CONCLUSION

In sum, there are material facts in dispute in this case regarding whether:  (1) plaintiff posed an immediate threat to Officer Estime during the moments preceding his use of pepper spray and (2) whether plaintiff resisted arrest.  These facts are needed for the Court to determine whether Officer Estime's use of force was objectively reasonable and to determine whether Office Estime is entitled to qualified immunity.  Given this, summary judgment on plaintiff's remaining claims in this civil rights action is not appropriate.  And so, for the foregoing reasons, the Court **DENIES** Officer Estime's motion for summary judgment.  Fed. R. Civ. P. 56.

The parties shall **FILE** a joint status report, **on or before October 11, 2022**, setting forth their respective views on the following issues:

1.   Whether the Court should refer this matter to a Magistrate Judge for a settlement conference; and
2.   Whether the Court should schedule this matter for trial and, if so:
     (a) the issues for trial;
     (b) the anticipated length of trial; and
     (c) the number of witnesses expected for each side.

Judgment is entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**


                                                            s/ Lydia Kay Griggsby
                                                            LYDIA KAY GRIGGSBY
                                                            United States District Judge